## HORATIO S. MASON *et al.*, RESPONDENTS, *v.* T. W. HACKETT, APPELLANT.

PARTNERSHIP LIABILITY OF PERSONS SHARING IN PROFITS. As a general rule, every person who shares in the profits of a trade is liable for its debts as a partner; but the mere receipt by a person of a certain sum of its money in proportion to its profits as compensation for his labor and services in the business, does not render him liable as a partner.

SHARE OF PROFITS AS COMPENSATION OF PARTNERSHIP AGENT. An agent or servant of a partnership may receive a sum in compensation for his services in proportion to the profits of the concern, without being liable as a partner, so long as he is not held out to the world as a partner, nor does any act sufficient to induce third persons to believe him a partner.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

This was a suit by Horatio S. Mason and Socrates Huff, partners doing business at Carson, under the firm name of Mason & Huff, against R. Perry and T. W. Hackett, of Ophir, to recover seventeen hundred and twenty-eight dollars and ninety-six cents, with interest thereon, for goods, wares, and merchandise sold and delivered.

The Court found, as conclusions of law, that Perry and Hackett were not partners *inter sese;* that they were partners *quoad* the world; and that Hackett's participation in the net profits of the business as a principal trader, which fact was found, made him in law liable for the goods furnished during his connection with the business, and whilst he was so participating in the profits, and rendered judgment for the sum claimed in the complaint, with interest thereon, amounting in all to eighteen hundred and ninety-one dollars and ninety-two cents and costs.

*A. C. Ellis,* for Appellant.

## I.

If the transaction or business relation between Perry and Hackett is susceptible of a different interpretation than that of partnership, or if some of the essential ingredients of a partnership are wanting, then there is no partnership *inter sese* nor as to third persons.   (Story on Partnership, Sec. 30.)

## II.

If Hackett was to receive a sum of money for his services equal to a given proportion of the profits, as a *compensation for his services,* or a residium of the profits, or per cent. of the profits beyond a certain sum, then the law does not imply a partnership as to third persons.   (*Muzzy* v. *Whitney,* 10 Johns. 226 ; 17 Vesey, 404 ; Story on Part. Secs. 32 to 49 ; 18 Wendell, 184 ; 6 Metcalf, 82 ; 3 Kent's Com. Sec. 25 and note ; 3 Comstock, 132 ; 17 Mass. 197 ; 12 Conn. 70 ; 20 Wend. 702.)

## III.

Hackett was not to participate in the profits, *as profits.*   He was simply to have for his services a *sum of money* from Perry, as a salary, over and above his $100 per month, equal to one-third of the profits above $300 per month.   He could in no legal sense have maintained an action of *account* as a partner with Perry.

## IV.

If Hackett participated only in the *gross profits,* having no interest in the capital stock, and was not liable for any losses, then he

is not a partner in the *net profits;* in other words, not a partner in the profits, *as profits,* and is not liable to third parties. (6 Pick. 335; 14 Pick. 193; 2 Black, 235, 998; Collyer on Part. 25 to 44.)

## V.

There is no pretense that Hackett ever held himself out as a partner to the world, or that either of the plaintiffs extended credit to the firm on Hackett's account; on the contrary, neither of them knew him, or knew that he was in any way connected with the business until long after the goods were sold.

## VI.

Hackett's alleged declarations to Mason and Rosenstock, and their attorney, in the conversation at Ophir, amount to nothing. He simply stated that he was not a partner of Perry, not in any way interested in the capital stock, not liable for any indebtedness of Perry, but was interested only in the profits, or the amount of the profits; and so he was in the sense referred to; that is, if the profits were large, his salary was increased in that proportion, and to that extent he was interested in them.

## VII.

The testimony of Perry is still stronger in Hackett's favor than Hackett's own—Perry treating this increase of salary, if business was prosperous, purely as a voluntary donation on his part, which he might withhold at pleasure.

*Robert M. Clarke,* for Respondents.

## I.

Add to the declarations of Hackett the circumstances of the case, the acts done, and the powers exercised by him in and about the business, not as a clerk or agent, but as a principal trader, and we have a clear case of partnership *quoad* the world. The business was conducted in the name of R. Perry & Co., the goods were ordered in the name of R. Perry & Co. by Hackett, not as a clerk or agent, but as a principal trader; and he made notes and bills,

signing the firm name of R. Perry & Co., and used the firm name generally with reference to business.

The exercise of these powers is wholly inconsistent with the idea of a mere clerkship or agency, and can be reconciled upon no other theory than that of partnership.   If Hackett had been a mere clerk, ordering goods for an employer, in place of signing his orders " R. Perry & Co.," he should and would have signed them "R. Perry &. Co., per Hackett, Clerk."

## II.

Upon Hackett's own theory, taking his version of the business arrangement as true and conclusive, he is responsible to Mason & Huff for the merchandise in suit.   Upon his own statement he was a participant in the profits of the business.   The substance of his testimony is, that he was to have in any event $100 per month for his services, and one-third of the excess of profits over $300 per month.   This participation in the profits of the business clearly brings him within the rule of liability to third parties dealing with the concern.   His liability is to be tested by the rule of the common law.   (Statutes of 1861, 1.)   By the common law the participant of partnership profits is in no instance exempt from liability. (*Waugh* v. *Carver*, 24 Bl. 235 ; *Grace* v. *Smith*, 24 Bl. 998 ; Story on Part. Sec. 57 to 60 ; Collyer on Part. 75 to 83 ; 6 Wharton, 147 ; 6 Serg. & Rawle, 259 ; 7 Ohio State, 172 ; Parsons on Part. 88 ; 3 N. H. 64 ; 15 Conn. 67 ; 16 Johnson, 39 ; 38 N. H. 287 ; 43 Me. 264.)

The case at bar falls within none of the exceptions put by Justice Story—even *he* does not attempt to engraft *this* upon the admitted rule of the common law.   (See Story on Part. Sec. 32.) Tried by the test, which counsel for appellant furnishes forth, viz, Hackett's right to compel an accounting between himself and Perry, this is an indubitable case of partnership *quoad* third persons dealing with the firm.   Had Perry refused settlement and payment of any sum in excess of $100, Hackett could have filed his bill, and compelled a showing and settlement.   In no other way could the amount of profits or Hackett's interest in the profits be ascertained. As the amount of profits was unascertained Hackett's demand was

unliquidated, and could only be fixed by the parties or by the Court. It was wholly contingent upon *first*, the existence of profits, and *secondly*, the amount of the profits.

By the Court, WHITMAN, J.

This appeal is on the part of defendant Hackett, against whom a judgment was rendered in the District Court of the Second Judicial District, as a copartner of defendant Perry ; and a subsequent order made denying a new trial.

The only question presented is as to the correctness of the findings of fact by the Court trying the case, it being admitted that its conclusions of law are logically deduced therefrom. The evidence on the part of plaintiffs was that they and their assignor, J. Rosenstock, sold goods to R. Perry & Co.; that a portion of such goods was delivered upon written orders of appellant signed R. Perry & Co. ; that neither plaintiffs nor their assignor were aware at the time of the sales who constituted the firm of R. Perry & Co.; that neither of them knew the defendant Hackett, or supposed that he was a member of the firm ; that afterward they, with their attorney, held conversations with Hackett, in which he declared that he was a partner in the profits, or was interested in the profits, but in no manner liable for the debts of the firm.

Hackett, testifying for himself, and on behalf of plaintiffs, said that he was employed as the general agent and manager of Perry ; that he was instructed by Perry to sign the name of R. Perry & Co. to orders for goods, checks, etc.; that he received a salary of one hundred dollars per month, and one-third of the profits over three hundred dollars per month, as further compensation; that he was liable to discharge at any time ; furnished no capital ; had no control over the business save as such agent, and no interest in its profits or losses, save as stated ; that his salary thus derived averaged from thirty to fifty dollars per month in excess of the one hundred dollars, and was therewith charged to himself and credited to Perry on the books, which were kept in Perry's name ; that the sign of R. Perry & Co. was on the store when he first went there ; and that the business was conducted in that firm name by Perry's direction ; that he bought no goods, save in the absence of Perry.

Hackett is corroborated by Perry, except that the amounts drawn in excess of the one hundred dollars were by him considered as donations.   Perry further swears, not only that Hackett was not his partner, but that he never had a partner in mercantile business in the State of Nevada.

There is no conflict in this testimony.   Hackett's unsworn statements are simply amplified in his evidence ; thus the only point for consideration is, whether such participation in the profits of Perry's business as is disclosed by the evidence renders Hackett liable to plaintiffs as a partner.

The general rule of law would compel every man who has a share in the profits of a trade to bear the losses as a partner ; but it is always proper to look at the particular circumstances of the case to ascertain whether such participation be not merely a compensation for services, or something other than an interest in the profits as profits.   In the language of Wilde, J.:   " On this point the distinction appears to us to be well established, that a party who participates in the profits of a trade or business, and has an interest in the profits as profits, is chargeable as a partner with respect to third persons ; but if he is only entitled to receive a certain sum of money in proportion to a given *quantum* of the profits, as a compensation for his labor and services, he is not thereby liable to be charged as a partner."

This doctrine is sustained by the weight of American authority. (*Denny et al.* v. *Cabot et al.*, 6 Met. 82 ; *Holmes et al.* v. *Old Colony R. R. Corporation*, 5 Gray, 58 ; *Turner* v. *Bissell*, 14 Pick. 192 ; *Loomis* v. *Marshall*, 12 Conn. 70 ; *Burckle* v. *Eckhart*, 3 Comst. 132 ; *Berthold et als.* v. *Goldsmith*, 24 Howard, 536.)

The curious upon this and other questions of liability as partner will find an able review of the same, and collection of authorities, in the American Law Review, October, 1867, and January, 1868.

With regard to taking profits as compensation for services, the writer says :   " Whether this compensation is fixed as so much money, or is to be ascertained in proportion to the profits, it does not cease to be compensation for the services of an agent as agent,

at least so long as such agent is neither held out to the world as a partner, nor does any act sufficient to induce third persons to believe him an actual partner."

Adopting this as the correct rule by which to test this case, and applying it to the evidence, there appears no warrant for the findings of the District Court.

Its order and judgment are therefore reversed, and the cause remanded.